UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                                :

ELGIN K. TURNER,                   :     04 CV 3278 (ARR)
                                :

               Plaintiff,       :     NOT FOR ELECTRONIC
                                :     OR PRINT
    -against-                  :     PUBLICATION
                                :

DAVIDSON/GILMOUR PIPE SUPPLY and    :     OPINION AND ORDER
ENTERPRISE ASSOCIATION METAL TRADES  :
BRANCH LOCAL UNION 638,         :
                                :

            Defendants.      : 
                                :

------------------------------------------------------------------ X

ROSS, United States District Judge:

      Plaintiff Elgin K. Turner ("plaintiff" or "Turner") has brought suit against his employer, defendant Davidson/Gilmour Pipe Supply ("Davidson/Gilmour"), and his union, defendant Enterprise Association Metal Trades Branch Local Union 638 ("Local 638"), alleging violations of Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e-5 et seq. Specifically, plaintiff asserts that defendants discriminated against him on the basis of race, color, and national origin with respect to the terms of his employment and his alleged constructive discharge in violation of Title VII. He also alleges that defendants retaliated against him for engaging in protected activity. In addition, plaintiff claims that Local 638 failed to properly represent and defend plaintiff during his employment. Presently before the court are defendants' motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, defendants' motions are granted and plaintiff's complaint is dismissed.

# BACKGROUND

The following facts are undisputed unless otherwise indicated.[1] In May 2002,

Davidson/Gilmour entered into a collective bargaining agreement ("CBA") with Local 638 for

the period of December 2001 to November 30, 2004. (Davidson/Gilmour Rule 56.1 Stmt. ¶ 10.)

The CBA covered non-management employees, including pipe handlers. (Id. ¶ 11.) The CBA

provided, inter alia, that unionized employees are entitled to ten vacation days, six sick days, and

one additional personal day per year. (Id. ¶ 12.) However, Davidson/Gilmour does not need the

union's permission to change an employee's shift or modify an employee's hours. (Id. ¶ 12;

Local 638 Rule 56.1 Stmt. ¶ 15.)

Plaintiff, an African-American male, was employed by Davidson/Gilmour from 1986 to

1990. (Davidson/Gilmour Rule 56.1 Stmt. ¶¶ 14-15.) Plaintiff voluntarily resigned in 1990 and

was hired again in May 1999. (Id. ¶ 18.) At all times relevant to this action, plaintiff was a

member of the Local 638. (See id. ¶ 27.) Plaintiff's position was classified as a pipe handler, but

his work primarily consisted of driving the hi-lo truck and loading and unloading trucks. (Id. ¶¶

22-23.) Operations Manager David Figaro permitted plaintiff to work the day shift from 7 a.m. to

3 p.m., instead of the typical day shift of 7 a.m. to 4 p.m., to accommodate plaintiff's night

employment with the Metro North Railroad. (Id. ¶ 21.)

---

[1] Plaintiff has failed to submit a statement of material facts in opposition to defendants' Rule 56.1 Statements, as required by Local Rule 56.1. Defendants asks the court to deem admitted all statements of facts in their Rule 56.1 Statements. Given plaintiff's pro se status, the court will deem the facts in defendants' Rule 56.1 statements to be admitted unless the court's own review of the record indicates there are disputed material facts. See, e.g., Pierre-Antoine v. City of New York, No. 04 CV 6987, 2006 WL 1292076, at *3 (S.D.N.Y. May 09, 2006).

On February 18, 2003, Warehouse Manager Michael Merto instructed all employees scheduled to work that day to shovel the snow surrounding Davidson/Gilmour's facilities. (Davidson/Gilmour Rule 56.1 Stmt. ¶ 28.) According to Davidson/Gilmour, the snow had impeded the company's ability to operate its business and no work could be performed until the snow had been cleared away. (Id. ¶ 30.) Plaintiff and all of his co-workers, with the exception of Andreas Valentine, refused to comply with Merto's orders. (Id. ¶¶ 31, 36.) Consequently, plaintiff and his co-workers who refused to comply were issued written warnings for insubordinate conduct. (Id. ¶ 31.) Valentine, on the other hand, was not reprimanded because he complied with the order. (Id. ¶ 36.) Plaintiff, along with his co-workers, filed a grievance with the Local 638, alleging harassment and mistreatment by Merto. ((Id. ¶¶ 38-39.)

On September 5, 2003, plaintiff failed to report to work to take inventory, which was apparently a mandatory duty. (Davidson/Gilmour Rule 56.1 Stmt. ¶ 42.) Consequently, Figaro issued a written warning to plaintiff regarding his absenteeism, but plaintiff was not suspended from work.[2] (Id. ¶¶ 43-44.) On September 11, 2003, plaintiff received another written warning. (Id. ¶ 46.) Pipe Shop Manager Charles Yancy, who was plaintiff's direct supervisor, reprimanded plaintiff for failing to load a special order pipe for a delivery to a customer. (Id.)

On November 20, 2003, plaintiff had an altercation with his co-worker Valentine while they were preparing for the day shift in the company locker room. (Davidson/Gilmour Rule 56.1 Stmt. ¶¶ 49-50.) According to plaintiff, Valentine had pulled out a pocket knife and threatened

---

[2] The warning letter indicates that plaintiff was suspended not simply reprimanded. (See Mellk Aff. Ex. G., "September 5th Warning Letter"). However, plaintiff testified at his deposition that he was, in fact, never suspended as a result of his absence. (Mellk Affirm. Ex. C at 185-86, "Pl. Dep. 5/23/05.")

plaintiff with it. (Pl. Dep. 5/23/05 at 268-69.) Plaintiff reported the incident to Yancy, who notified Merto about it. (Davidson/Gilmour Rule 56.1 Stmt. ¶ 51.) Merto discussed the incident with plaintiff and immediately terminated Valentine's employment pursuant to Davidson/Gilmour's policy barring employees from bringing weapons onto the premises. (See id. ¶ 52; Pl. Dep. 5/23/05 at 271.) According to plaintiff, Valentine went to Davidson/Gilmour the next morning to request reinstatement and made threats against plaintiff through a co-worker, William Garcia. (Pl. Dep. 5/23/05 at 280.) At this point, plaintiff reported Valentine's conduct to the police. (Id. at 280-81.)

In the meantime, Local 638 contacted Davidson/Gilmour with regard to reinstating Valentine. (Davidson/Gilmour Rule 56.1 Stmt. ¶ 57.) Davidson/Gilmour conducted an investigation to determine whether the initial termination decision should be reversed. (Id. ¶ 60.) Valentine claimed that plaintiff initiated the argument. (Id. ¶ 61.) Moreover, he denied possession or use of a knife, and he denied making any threats to plaintiff. (Id.) Davidson/Gilmour re-interviewed other employees who had witnessed the altercation, and they stated that they did not see Valentine in possession of a knife. (Id. ¶ 62.) One witness, Gordon Persaud, had initially stated that he believed he saw a knife in Valentine's hands at the time of the incident. (See id. ¶ 63; Pl. Ex. at 11, "Persaud Statement dated Nov. 21, 2003.") However, according to Davidson/Gilmour, during the course of its investigation, Persaud retracted this statement and instead stated that he did not see a knife and did not know what was in Valentine's hands at the time of the incident. (See Davidson/Gilmour Rule 56.1 Stmt. ¶ 63.) The investigation further found that no other witnesses reported seeing a knife in Valentine's hands.

4

(Id. ¶ 62.) As a result of the investigation and Valentine's strong employment record prior to the incident, Davidson/Gilmour reinstated Valentine. (Id. ¶ 64.)

According to Davidson/Gilmour, Figaro gave plaintiff a performance evaluation on December 10, 2003, in which plaintiff was rated poorly due to his excessive tardiness and absenteeism. (Davidson/Gilmour Rule 56.1 Stmt. ¶¶ 66-67.) Subsequently, plaintiff was informed by Figaro that he would be transferred to the night shift. (Id. ¶ 74.) Robert Krueger, the Vice-President of Davidson/Gilmour, stated that he had made the decision to transfer plaintiff because he believed that plaintiff's skill set would contribute to higher productivity on the night shift. (Id. ¶ 69; see also Pl. Dep. I at 249-50.) In addition, Krueger believed that it was necessary to separate plaintiff from Valentine, who had to work on the day shift due to his position as a machinist. (Davidson/Gilmour Rule 56.1 Stmt. ¶¶ 71-72.) It is undisputed that plaintiff never informed either Krueger or Merto that he had another job that would impede his ability to work on the night shift. (Id. ¶ 79; Pl. Dep. II at 146.) In fact, plaintiff admitted during his deposition that he never told Krueger that he had a second job with the MTA. (Pl. Dep. II at 146.) It is disputed, however, whether Figaro was aware that plaintiff's job with the MTA would impede his ability to work the night shift with Davidson/Gilmour.

On December 12, 2003, plaintiff contacted John Donnelly, Business Agent of Local 638, to complain of his reassignment to the night shift. (Local 638 Rule 56.1 Stmt. ¶ 14; Brook Affirm. Ex. E at 18-20, "Pl. Dep. 5/24/05.") At his deposition, plaintiff testified that Donnelly told him to report to his previously assigned shift. (Id. at 20.) According to Local 638, however, Donnelly informed plaintiff that the CBA does not restrict Davidson/Gilmour's right to assign employees to different shifts. (See Local 638 Rule 56.1 Stmt. ¶ 15; Donnelly Aff. ¶ 8.) Donnelly

further states that he told plaintiff to report to the night shift and that, in the meantime, he would try to convince Davidson/Gilmour to change its decision. (Donnelly Aff. ¶ 8.)

On December 15, 2003, plaintiff reported to work for the morning shift instead of the night shift. (Local 638 Rule 56.1 Stmt. ¶ 16; Pl. Dep. 5/24/05 at 32.) Plaintiff was turned away by his supervisors and told to report for the night shift instead. (Id.) It is disputed whether Donnelly had discussed the issue with Krueger. In his affidavit, Donnelly stated that he discussed the issue with plaintiff's employer and was told that Davidson/Gilmour needed to assign Valentine to the day shift based on his skill set and that it would not change its decision to assign plaintiff to the night shift. (Donnelly Aff. ¶ 9.) At his deposition, plaintiff testified that his supervisors told him that Donnelly had talked to Krueger, but Krueger nonetheless wanted plaintiff to report to the night shift. (See Pl. Dep. 5/24/05 at 32-33.) Krueger, however, does not recall whether Donnelly or any other Local 638 representative contacted him with regard to plaintiff's shift change. (See Krueger Aff. ¶ 44.)

Plaintiff did not show up for the night shift on December 15, 2003, nor did he report for work at Davidson/Gilmour or inform Davidson/Gilmour of his reasons for not reporting to work thereafter. (See Davidson/Gilmour Rule 56.1 Stmt. ¶¶ 82-83; Pl. Dep. 5/23/05 at 30-31, 266-67). On December 30, Figaro, on behalf of the company, wrote a letter to plaintiff directing him to report to work for the night shift by January 5, 2004 or contact the company. (Davidson/Gilmour Rule 56.1 Stmt. ¶ 84.) Figaro further specified that plaintiff was required to comply with the terms of the letter or his employment would be terminated. (Id.) Plaintiff did not report for work or contact the company with regard to his concerns about the shift transfer. (Id. ¶¶ 85-86; Pl. Dep. 5/24/05 at 148.) Plaintiff did, however, testify that he attempted to contact Donnelly on and

after December 15, 2003, but Donnelly did not return his calls. (<u>See</u> Pl. Dep. 5/24/05 at 35-36, 38.) Plaintiff stated that he stopped calling Donnelly less than one month after the official shift transfer. (<u>Id.</u>)

In January 2004, plaintiff filed a charge of discrimination with the New York State Division of Human Rights.[3] (Mellk Aff. Ex. K, "N.Y. Div. of Human Rights Compl.") Plaintiff alleged that he was discriminated against by Davidson/Gilmour on the basis of his race and color and that he was retaliated against. (<u>Id.</u>) Specifically, he claimed that Merto had animosity towards him due to his race and that Davidson/Gilmour treated black employees differently from non-black employees. (<u>Id.</u>) On May 6, 2004, the Equal Employment Opportunity Commission ("EEOC") issued a dismissal and notice of rights order, which stated that it was unable to conclude whether plaintiff established that Davidson/Gilmour violated plaintiff's rights. (<u>See</u> Mellk Aff. Ex. L, "EEOC Dismissal and Notice of Rights.")

On July 29, 2004, plaintiff filed the instant complaint, alleging discrimination on the basis of race, color, and national origin in violation of his rights under Title VII and a breach of Local 638's duty of fair representation.

## DISCUSSION

### A. <u>Summary Judgment Standard and Title VII Requirements</u>

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if the pleadings, depositions, answers, interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

[3] The administrative charge appears to be signed by plaintiff on January 10, 2004 and was notarized on January 12, 2004. <u>See</u> N.Y. Div. of Human Rights Compl.

party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome of the litigation if application of the relevant substantive law requires their determination. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). The moving party has the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex Corp. v. Cartrett, 477 U.S. 317, 323 (1986). The substantive law determines the facts that are material to the outcome of a particular litigation. See Anderson, 477 U.S. at 250; Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975). In determining whether summary judgment is appropriate, a court must resolve all ambiguities, and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

If the moving party meets its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Proc. 56(e). The non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. Only when it is apparent that no rational finder of fact "could find in favor of the non-moving party because the evidence to support its case is so slight"

should summary judgment be granted. <u>Gallo v. Prudential Residential Servs. Ltd. Partnership</u>, 22 F.2d 1219, 1223 (2d Cir. 1994).

**B.**     **Plaintiff's Claims**

1.     <u>Claims Against Local 638</u>

a)     *Title VII Claims*

Local 638 argues that this action should be dismissed because plaintiff failed to exhaust his administrative remedies by filing a timely charge naming Local 638 as a party with the EEOC as required by Title VII. "A complainant must file a charge against a party with the EEOC or an authorized state agency before the complainant can sue that party in federal court under Title VII." <u>Vital v. Interfaith Med. Ctr.</u>, 168 F.3d 615, 619 (2d Cir. 1999) (citing 42 U.S.C. § 2000e-5(f)(1)). Filing a charge with the EEOC "serves to notify the charged party of the alleged violation and also brings the party before the EEOC, making possible effectuation of [Title VII's] primary goal of securing voluntary compliance with its mandates." <u>Id.</u> (quoting <u>Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130</u>, 657 F.2d 890, 905 (7th Cir. 1981)). Nonetheless, the Second Circuit has recognized an "identity of interest" exception to this rule "[b]ecause these charges are generally filed by parties not versed in the vagaries of Title VII and its jurisdictional and pleading requirements." <u>See</u> <u>id.</u> (quoting <u>Johnson v. Palma</u>, 931 F.2d 203, 209 (2d Cir. 1991). Under the "identity of interest" exception, a plaintiff may proceed with a Title VII action against a party not named in the EEOC charge if there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge. <u>Id.</u> Four factors determine whether the "identity of interest" exception applies:

(1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Johnson, 931 F.2d at 209-10 (quoting Glus v. G.C. Murphy Co., 562 F.2d 880, 888 (3d Cir. 1977)).

Here, it is undisputed that plaintiff failed to file an administrative complaint against Local 638. Because the charge only named Davidson/Gilmour, the EEOC right to sue letter only permits suit against Davidson/Gilmour unless plaintiff can establish an identity of interest between Davidson/Gilmour and Local 638. However, the record fails to support a finding of an identity of interest between Local 638 and Davidson/Gilmour. In fact, this case is closely analogous to Vital, in which the Second Circuit affirmed the district court's dismissal of a Title VII action against a union because the plaintiff had only named his employer in the EEOC charge. 168 F.3d at 620.

First, it is clear from the record here that plaintiff was fully aware of Local 638's role at the time he filed his EEOC complaint in January 2004. Plaintiff testified that on December 15, 2003, he felt betrayed by Donnelly's failure to adequately represent his interests to Davidson/Gilmour. (Pl. Dep. 5/24/05 at 35-36.) Plaintiff also testified that he stopped contacting Local 638 less than a month after the incident, which directly coincides with the date

of his administrative charge.[4] (Id. at 40.) Second, the interests of Local 638 and

Davidson/Gilmour are sufficiently dissimilar that it would be necessary to involve Local 638 in

any voluntary conciliation. See, e.g., Blake v. Potter, No. 03 Civ. 7733, 2004 WL 2290492, at *4

(S.D.N.Y. Oct. 8, 2004) (concluding that interests of union and United States Postal Service are

sufficient disparate for purposes of identity of interest analysis). Third, plaintiff fails to allege

that Local 638 represented to him that its relationship to him was through his employer. Given

these findings, it is clear that there is no identity of interest between Local 638 and

Davidson/Gilmour.[5] Moreover, "courts in this circuit consistently have held that unions and

employers lack the 'clear identity of interest' required to waive the Title VII and ADEA filing

requirements." Wells v. Mount Vernon Hosp., No. 01 Civ. 9129, 2002 WL 1561099 (S.D.N.Y.

July 15, 2002) (collecting cases).

Because plaintiff did not exhaust his administrative procedures as to Local 638, his

claims under Title VII against Local 638 must be dismissed.

b)      *Duty of Fair Representation Claim Under § 301 of the Labor Management Relations Act*

---

[4] In an affidavit dated December 28, 2005, well after the instant motion was fully briefed, plaintiff states that he continued calling Charles Krauss, the new business agent at Local 638, until early February 2004. It is well-established that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." Hayes v. New York City Dep't of Corrections, 84 F.3d 614, 619 (2d Cir. 1996); see also Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) ("Factual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts [the plaintiff's] own prior deposition testimony."). Plaintiff's affidavit clearly contradicts his deposition testimony and, thus, will not be considered by the court.

[5] It is unclear whether Local 638 suffered actual prejudice from not being named in the EEOC charge. However, this court rests its conclusion that there is no identity of interest on the strength of the three other factors. See Vital, 168 F.3d at 620; Blake, 2005 WL 2290492, at *5.

11

In light of liberal pleading standards for pro se plaintiffs, the court interprets plaintiff's

claim with regard to Local 638 as a claim of breach of the duty of fair representation pursuant to

§ 301 of the Labor Management Relations Act, 29 U.S.C. § 185. However, such a claim is

subject to a six-month statute of limitations. See DelCostello v. Int'l Bhd. of Teamsters, 462

U.S. 151, 172 (1983); Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638, 227 F.3d

29, 32 (2d Cir. 2000). A claim of breach of the duty of fair representation accrues when the

union member knew or reasonably should have known that the union has breached its duty.

Kavowras v. New York Times Co., 328 F.3d 50, 55 (2d Cir. 2000). Thus, the limitations period

here began to run, at the latest, on January 15, 2004, the approximate date upon which plaintiff

stopped calling Local 638 to complain of his work conditions.[6] However, plaintiff stated that he

felt betrayed by Donnelly on December 15, 2004 and, thus, the court could conclude that plaintiff

was aware or reasonably should have been aware of Local 638's breach at that point. Even

assuming the later date applies, plaintiff filed the instant action more than six months after the

limitations period began to run and has offered no explanation to justify tolling the statute of

limitations. See Blake, 2004 WL 2290492, at *4 (granting summary judgment to defendant

union for plaintiff's failure to file duty of fair representation claim within six months of accrual

date).

In any event, plaintiff's claim cannot survive summary judgment on the merits. A union

breaches its duty of fair representation only if its actions "can fairly be characterized as so far

outside a 'wide range of reasonableness' ... that [they are] wholly 'arbitrary, discriminatory, or in

_____

[6] In his affidavit dated December 28, 2005, plaintiff states that he stopped calling Local
638 in February 2004. However, as explained above, plaintiff's affidavit contradicts his
deposition testimony and, thus, will not be considered by the court.

bad faith.'" Spellacy v. Airline Pilots Ass'n Int'l, 156 F.3d 120, 126 (2d Cir. 1998) (quoting Air

Line Pilots Ass'n Int'l v. O'Neill, 499 U.S. 65, 67 (1991)). Here, even viewing the record in the

light most favorable to plaintiff, the court cannot conclude that plaintiff has established that

Donnelly or Local 638 acted in bad faith or in an arbitrary or discriminatory manner by failing to

follow up with Davidson/Gilmour regarding plaintiff's shift transfer. As an initial matter, there

is simply no evidence that Davidson/Gilmour breached the CBA by changing plaintiff's shift.

The CBA clearly states that "[h]ours are to be determined by management." (See Brooks Affirm.

Ex. C at Art. II ¶ 1, "CBA.") In addition, both Donnelly and Krueger have stated that shift

changes are in management's control. (See Donnelly Aff. ¶ 8; Krueger Aff. ¶ 12.) Plaintiff has

not put forth any evidence suggesting otherwise. At most, viewing the record in the light most

favorable to plaintiff, (1) Donnelly told plaintiff to report for work at his previously assigned

shift time; (2) Donnelly told plaintiff he would try to convince management to change its

decision; and (3) Donnelly failed to return plaintiff's calls. Aside from conclusory allegations,

plaintiff fails to put forth any evidence indicating that Donnelly or others at Local 638 acted in an

arbitrary or discriminatory manner by failing to pursue plaintiff's complaint. In fact, according to

plaintiff, Donnelly and Local 638 aided him with prior grievances and had discussed plaintiff's

complaint with Krueger on or before December 15, 2003. (See Pl. Dep. 5/24/05 at 32, 47-51);

Moreover, plaintiff cannot establish that Donnelly or Local 638 acted in bad faith, given the fact

that the CBA effectively barred the union from filing a grievance with regard to

Davidson/Gilmour's decision to change plaintiff's shift. Absent a showing of arbitrariness,

discrimination, or bad faith, plaintiff cannot establish that Local 638 breached its duty of fair

representation.

Given that plaintiff has failed to exhaust his Title VII claims against Local 638 and his duty of fair representation claim is barred by the statute of limitations and, in any event, meritless, the court concludes that dismissal is warranted on all claims against Local 638.

1.  Claims Against Davidson/Gilmour

a)  *Discrimination on the Basis of Race, Color, and National Origin*

Plaintiff alleges that Davidson/Gilmour discriminated against him on the basis of race, color, and national origin.[7] Davidson/Gilmour responds that plaintiff has failed to establish a prima facie case of discrimination because he has not shown that he suffered an adverse employment action or that any adverse employment action occurred under circumstances giving rise to an inference of discrimination. The court agrees that plaintiff has failed to make a prima facie showing of discrimination and, thus, his discrimination claim should be dismissed.

In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the Supreme Court provided the framework to evaluate a claim under Title VII. First, the plaintiff must make out a prima facie case of discrimination by showing that "(1) she is a member of a protected class; (2) she

---

[7] Davidson/Gilmour argues that because plaintiff failed to allege that he was discriminated on the basis of his national origin in the EEOC complaint that such a claim is unexhausted and, therefore, not properly before this court. "[C]laims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related to those that were filed with the agency.'" Shah v. New York State Dep't of Civil Serv., 168 F.3d 610, 614 (2d Cir. 1999). Conduct alleged in a complaint is "reasonably related" to conduct described in an EEOC charge in three instances: (1) if it is within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; (2) if it would constitute retaliation for filing a timely EEOC charge; or (3) if it constitutes further incidents of discrimination perpetrated in precisely the same manner as alleged in the EEOC charge. Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1402-03 (2d Cir. 1993). The court assumes arguendo that plaintiff's claim of national origin discrimination fits within the scope of her race and color discrimination claims, but nonetheless dismisses the claim for the reasons described in the text.

14

applied and was qualified for a job for which the employer was seeking applicants; (3) she suffered an adverse employment action; and (4) the circumstances surrounding that action permit an inference of discrimination." Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 126 (2d Cir. 2004); accord McDonnell Douglas, 411 U.S. at 802. After plaintiff has made the required prima facie showing, a presumption of discrimination is created and the burden of production shifts to the defendant, who must then offer "evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). After the defendant produces evidence of a non-discriminatory reason for its actions, the McDonnell Douglas presumption disappears, and all that remains is the ultimate burden of persuasion which must at all times be born by the plaintiff. Id. at 510-11. To avoid summary judgment the plaintiff must then present sufficient evidence for a reasonable fact finder to conclude that the defendant's purported explanation is merely a pretext, and that intentional discrimination was actually a factor in defendant's actions. Reeves, 530 U.S. at 143.

Here, it is undisputed that plaintiff is a member of a protected class and was qualified for his job, thus satisfying the first and second prongs to establish a prima face case of discrimination. However, plaintiff fails to make a sufficient showing on the third and fourth prongs of the analysis. Reading his complaint liberally, the court infers that plaintiff alleges that he suffered adverse employment actions when Davidson/Gilmour (1) reprimanded him on two occasions in September 2003; (2) gave him a poor performance evaluation in December 2003; (3) transferred him to the night shift over his objections; and (4) constructively discharged him by transferring him to the night shift with knowledge that he worked a different job at night.

15

The Second Circuit has defined an adverse employment action as "a materially adverse change in the terms and conditions of employment." Weeks v. New York State Div. of Parole, 273 F.3d 76, 85 (2d Cir. 2001) (quoting Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)), abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 535 U.S. 101 (2002). The term "materially adverse" indicates a change in working conditions that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." Id. at 85. The types of actions that might meet this test include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." Id.

Plaintiff cannot establish that either the written reprimands or the poor performance evaluation materially changed the terms and conditions of his employment. First, plaintiff fails to even allege that either the reprimands or the performance evaluation affected the terms and conditions of his employment in any way. Furthermore, he fails to offer any evidence suggesting that the reprimands or poor evaluation led to termination, suspension, demotion, or loss of benefits or pay. The record in fact shows that plaintiff was simply given a written warning for his failure to report to work on September 5, 2003 to take inventory, (Pl. Dep. 5/23/05 at 185-86, 188; Figaro Aff. ¶ 10), and for his failure to load a special order pipe for delivery to a customer on September 11, 2003, (Pl. Dep. 5/23/05 at 209). Moreover, the record also shows that the poor evaluation did not directly affect the terms of plaintiff's employment. The reprimand itself merely states that it is a "warning" and that "[the] next mistake you make[,] you will be suspended." (Mellk Affirm. Ex. H, "9/11/2003 Warning Letter.") Thus, viewing the record in

16

the light most favorable to plaintiff, the court concludes that no reasonable trier of fact could find

that plaintiff suffered an adverse employment action based on either the written reprimands or the

poor performance evaluation. See, e.g., Uddin v. City of New York, No. 03 Civ. 4093, 2006 WL

953837, at *14 (S.D.N.Y. Apr. 12, 2006) ("[N]egative evaluations standing alone without any

accompanying adverse consequences are not adverse employment actions."); Smith v. Ward

Leonard Elec. Co., No. 00 Civ. 3703, 2004 WL 1661098, at *8 (S.D.N.Y. July 23, 2004)

(holding that plaintiff has failed to establish that he suffered an adverse employment action

because he "merely argues that he received written warnings, but does not inform the Court what,

if any, consequences those warnings carried.")

 With respect to his transfer to the night shift, plaintiff claims that the transfer itself

constitutes an adverse employment action and resulted in his constructive discharge. Transfer to

an undesirable work shift may constitute a materially adverse change in the terms and conditions

of employment if it results in other unfavorable consequences. See Little v. Nat'l Broad. Co.,

210 F. Supp. 2d 330, 379 (S.D.N.Y. 2002) (finding that assignment to late night and weekend

shifts, coupled with loss in overtime pay and working "erratic" hours, constitute adverse

employment action). In isolation, plaintiff's transfer to the night shift did not result in any

material adverse change in the terms of plaintiff's employment. Plaintiff would perform the

same tasks he performed during the day shift and, in fact, would receive a ten percent pay

differential for working the night shift. (Krueger Aff. ¶¶ 31, 38.) However, the record shows

that plaintiff had a night position with the Metro North Railroad and had negotiated a seven-hour

daytime schedule with Figaro to accommodate his nighttime employment. (Pl. Dep. 5/23/05 at

62-63, 114-15, 117.) According to plaintiff, the consequence of Davidson/Gilmour's decision

17

was that plaintiff would have to choose between his position there and his position at Metro North Railroad. However, plaintiff has put forth no evidence, aside from his conclusory allegations, indicating that the decision was made with knowledge that plaintiff had another night job. Figaro denies recalling that plaintiff had a second job that would prevent him from working the night shift. (Figaro Aff. ¶ 20.) Krueger also denies having any knowledge of plaintiff's second job and claims that he made the decision to transfer plaintiff to the nightshift without input from Figaro or Merto. (Krueger ¶¶ 37, 39, 41.) Moreover, there is simply no evidence indicating that plaintiff notified Figaro or Krueger that he could not work the night shift because it interfered with his second job. Figaro and Krueger deny that plaintiff mentioned his conflict at the time of the transfer decision, (Figaro Aff. ¶ 22; Krueger Aff. ¶ 42), and plaintiff, in fact, testified that he did not remind Figaro or notify Krueger of his second job, (Pl. Dep. 5/23/05 at 259, 263). Given that plaintiff failed to notify his superiors about his scheduling conflict and refused to return to work or contact Davidson/Gilmour after December 15, 2004, this court is reluctant to conclude that a reasonable factfinder could find that plaintiff was placed in the untenable position of choosing between two jobs and, thus, suffered an adverse employment action.

In any event, plaintiff has not put forth any facts establishing that the circumstances surrounding his transfer to the night shift permit an inference of discrimination. There is simply no evidence that the transfer decision was motivated by discriminatory animus or that Davidson/Gilmour treated similarly situated employees any differently than plaintiff. At most, the record shows that Davidson/Gilmour kept Valentine, a black native of the Dominican Republic, on the day shift when it transferred plaintiff, an African-American, to the night shift.

18

(Pl. Dep. 5/23/05 at 253.) Plaintiff apparently concedes that he was not discriminated against with respect to his transfer on the basis of race or color, (Pl. Dep. 5/23/05 at 253.) He instead alleges that Valentine was treated more favorably than himself on the basis of national origin because non-natives were preferred over natives. (Id.) However, it is clear from the record that Valentine and plaintiff had different skill sets and were therefore not similarly situated. (Krueger Aff. ¶¶ 33, 36.) Moreover, plaintiff's conclusory allegations of discrimination are insufficient to establish a prima facie case. See Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) ("[E]ven in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment.").[8]

Viewing the record in the light most favorable to plaintiff, no reasonable juror could find that plaintiff suffered an adverse employment action or that the circumstances surrounding any adverse action permit an inference of discrimination. Thus, plaintiff has failed to establish a prima facie case of discrimination and summary judgment is warranted on this claim.

b)    *Retaliation*

Plaintiff also alleges that he was retaliated against for filing the initial union grievance from the snow shoveling incident in February 2003. For a claim of retaliation, the plaintiff's prima facie case must show that (1) he participated in a protected activity about which defendant was aware; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. See Feingold v. New York,

---

[8] While plaintiff only provides conclusory allegations concerning discrimination, he provides detailed accounts of what appears to be his real problem with Valentine—the fact that Valentine was allegedly a "news carrier" who communicated employee complaints to management. (See, e.g., Pl. Aff. at 5.)

366 F.3d 138, 156 (2d Cir. 2004). The court summarily dismisses plaintiff's retaliation claim because plaintiff does not allege that he engaged in protected activity under Title VII. There is simply no evidence indicating that plaintiff's February 2003 union grievance alleged discrimination. Moreover, there is no evidence that plaintiff complained of any discrimination based on race, color, or national origin, prior to filing his EEOC complaint in February 2004. Given that plaintiff fails to allege that he engaged in protected activity, plaintiff cannot establish a prima facie case of retaliation. See, e.g., Clemente v. New York State Div. of Parole, No. 01 Civ. 3945, 2004 WL 1900330, at *13 (S.D.N.Y. Aug. 24, 2004) (holding that union grievances that fail to allege discrimination do not qualify as protected conduct under Title VII); Marshall v. National Assoc. of Letter Carriers Br. 36, Nos. 00 Civ. 3167 & 01 Civ. 3086, 2003 WL 223563, at *9 (S.D.N.Y. Feb. 03, 2003) (same). Accordingly, summary judgment is also warranted on plaintiff's retaliation claim.

## CONCLUSION

For the foregoing reasons, the court grants defendant's motion for summary judgment on plaintiff's discrimination and retaliation claims. The court therefore dismisses the complaint in its entirety. The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

_____
Allyne R. Ross
United States District Judge

Dated: June 13, 2006
       Brooklyn, New York

SERVICE LIST:

*Pro Se* Plaintiff
Elgin K. Turner
1049 Sterling Place #11
Brooklyn, NY 11213


Counsel for Defendants
Wendy J. Mellk
Jackson Lewis, LLP
58 South Service Road
Suite 410
Melville, NY 11747

Richard S. Brook
Law Office of Richard S. Brook
114 Old Country Road
Suite 250
Mineola, NY 11501


cc: Magistrate Judge Lois Bloom